IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHWESTERN DIVISION

| | |
|---|---|
| GLENN A. TAFF, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 3:11-5060-DGK-SSA |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## ORDER AFFIRMING COMMISSIONER'S DECISION

Plaintiff Glenn Taff seeks judicial review of the Commissioner of Social Security's denial of his application for disability insurance benefits under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401, *et. seq.*, and application for supplemental security income (SSI) based on disability under Title XVI of the Act, 42 U.S.C. §§ 1381 *et. seq*. Plaintiff has exhausted all of his administrative remedies and judicial review is now appropriate under 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3).

Taff contends he is disabled because of hand problems, knee problems, back problems, and chronic obstructive pulmonary disease ("COPD"). The Administrative Law Judge ("ALJ") denied Taff's applications, finding that while he possessed several severe impairments, he retained the residual functional capacity to perform unskilled light work, such as a marker or an office helper, as well as unskilled sedentary work, including employment as a small parts bonder or a production checker.

Taff argues the ALJ erred in determining his residual functional capacity and in evaluating his credibility. After carefully reviewing the record, the Court finds the ALJ's

decision is supported by substantial evidence on the record as a whole, and the Commissioner's decision is AFFIRMED.

## Factual and Procedural Background

A summary of the medical record is presented in the parties' briefs and is repeated only to the extent necessary.

Taff filed his application for disability benefits and supplemental security income on December 8, 2008. The Commissioner denied his application on January 28, 2008, and he appealed. Following a hearing, an ALJ ruled Taff was not disabled as defined under the Act. On June 26, 2011, the Appeals Council of the Social Security Administration denied Taff's request for review, leaving the ALJ's decision as the Commissioner's final decision.

## Standard of Review

A federal court's review of the Commissioner's decision to deny disability benefits is limited to determining whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000). Substantial evidence is less than a preponderance, but enough evidence that a reasonable mind would find it sufficient to support the Commissioner's conclusion. *Id.* In making this assessment, the court considers evidence that detracts from the Commissioner's decision, as well as evidence that supports it. *Id.* The court may not reverse the Commissioner's decision as long as substantial evidence in the records supports this decision, even if substantial evidence in the record also supports a different result, or if the court might have decided the case differently were it the initial finder of fact. *Id.*

**Analysis**

Generally, a federal court's review of the Commissioner's decision to deny an application for benefits is restricted to determining whether the Commissioner's decision is consistent with the Act, the regulations, and applicable case law, and whether the findings of fact are supported by substantial evidence on the record as a whole. In determining whether a claimant is disabled, the Commissioner follows a five-step evaluation process.[1]

Taff contends the ALJ erred: (1) by not making a proper residual functional capacity ("RFC") determination; and (2) by making a credibility analysis which is not supported by substantial evidence on the record. The Court finds no merit to either argument.

**A.     The ALJ properly formulated Taff's RFC.**

Plaintiff argues the ALJ failed to provide a proper RFC by not obtaining any medical opinion evidence of his ability to function, instead relying on an evaluation form that was not completed by a doctor but by a "state agency decision maker" who is not a doctor.

An ALJ's RFC determination is based on all of the record evidence. *Wildman v. Astrue*, 596 F.3d 959, 969 (8th Cir. 2010) (citing *Roberts v. Apfel*, 222 F.3d 466, 469 (8th Cir. 2000)); *see also* 20 C.F.R. § 416.945; SSR 96-8p. It is not based only on "medical" evidence, i.e., evidence from medical reports or sources, rather it is based on all the relevant, credible evidence

---

[1] The five-step process is as follows: First, the Commissioner determines if the applicant is currently engaged in substantial gainful activity. If so, he is not disabled; if not, the inquiry continues. At step two the Commissioner determines if the applicant has a "severe medically determinable physical or mental impairment" or a combination of impairments. If so, and they meet the durational requirement of having lasted or being expected to last for a continuous 12-month period, the inquiry continues; if not, the applicant is considered not disabled. At step three the Commissioner considers whether the impairment is one of specific listing of impairments in Appendix 1 of 20 C.F.R. § 404.1520. If so, the applicant is considered disabled; if not, the inquiry continues. At step four the Commissioner considers if the applicant's residual functional capacity ("RFC") allows the applicant to perform past relevant work. If so, the applicant is not disabled; if not, the inquiry continues. At step five the Commissioner considers whether, in light of the applicant's age, education and work experience, the applicant can perform any other kind of work. 20 C.F.R. § 404.1520(a)(4)(i)-(v) (2009); *King v. Astrue*, 564 F.3d 978, 979 n.2 (8th Cir. 2009). Through step four of the analysis the claimant bears the burden of showing that he is disabled. After the analysis reaches step five, the burden shifts to the Commissioner to show that there are other jobs in the economy that the claimant can perform. *King*, 564 F.3d at 979 n.2.

3

of record. *See Cox v. Astrue*, 495 F.3d 614, 619 (8th Cir. 2007). In formulating an RFC, "the ALJ is required to set forth specifically a claimant's limitations and to determine how those limitations affect" the claimant's ability to perform exertional tasks. *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003). Before determining an applicant's RFC, the ALJ must assess the credibility of his or her subjective complaints. "[Q]uestions of fact, including the credibility of a plaintiff's subjective testimony, are primarily for the [ALJ] to decide, not the court." *Benskin v. Bowen*, 830 F.2d 878, 882 (8th Cir. 1987). Finally, Social Security Ruling 96-8p requires the ALJ to identify a claimant's functional limitations and then assess the claimant's work-related abilities on a function-by-function basis, including physical, mental, and other limitations. SSR 96-8p.

Here the ALJ found that Taff had the RFC to perform a range of light work in that he was limited to lifting or carrying 10 pounds frequently and 20 pounds occasionally; sitting about six hours in an eight-hour workday with normal breaks, and standing or walking about six hours in an eight-hour workday with normal breaks. R. at 12. The ALJ also found Taff was limited to occasional climbing of ladders, ropes, or scaffolding; should avoid concentrated exposure to extreme cold and vibration; and could not perform repetitive power gripping with his left hand. *Id.*

In making this finding, the ALJ analyzed Taff's credibility at length, R. at 14-15, and found that "the intensity, persistence and limiting effects" of his symptoms were not credible beyond those limitations described above. As discussed in detail below, the ALJ's treatment of the subjective aspects of Taff's complaints complied with the regulations, 20 C.F.R. §§ 404.1529, 416.929, and the framework set forth in *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). Therefore, the Court should defer to the ALJ's credibility determination. *Gregg v.*

*Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003) ("If an ALJ explicitly discredits the claimant's testimony and gives good reason for doing so, we will normally defer to the ALJ's credibility determination.").

Taff's claim that "the record is void of any medical evidence to support the ALJ's RFC assessment" is unavailing. As a threshold matter, "[i]t is the claimant's burden, and not the Social Security Commissioner's burden, to prove the claimant's RFC." *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see* 20 C.F.R. §§ 404.1512, 416.912; *see also Steed v. Astrue*, 524 F.3d 872, 876 (8th Cir. 2008) ("At the very least, the claimant's failure to provide medical evidence with this information should not be held against the ALJ when there is medical evidence that supports the ALJ's decision.").

Even if it were the Commissioner's burden to establish Taff's RFC, the record here contains medical evidence supporting the ALJ's RFC determination, namely a report from Dr. Saad Al-Shathir, M.D. Dr. Al-Shathir evaluated Taff's physical functions and observed that he could "sit up, transfer, reach, bend, cross his legs, reach above his head, manipulate objects in his hands, do his ADL [activities of daily living], [and] kneel." R. at 295. This opinion is consistent with the physical residual functional capacity assessment test performed by Greg Turner, the non-physician state agency worker, whose report made more specific findings about Taff's limitations. Thus, not only does the medical evidence support the ALJ's RFC determination, this evidence is consistent with the other relevant, credible evidence on the record.

Taff's argument that the ALJ gave too much weight to Turner's report is also without merit. While the disability examiner was not a physician, and so his RFC assessment was not entitled to the weight of a medical opinion, the ALJ's decision is supported by the record as a whole. The ALJ did not state that he relied upon or was according weight to the disability

examiner's report. Rather, he recognized that it comported with the overall record evidence as a whole. R. at 15. Because the record supports the ALJ's conclusion that Plaintiff's physical impairments were not disabling, the ALJ's reference to the disability examiner's RFC assessment should not alter the outcome. *See Jones v. Astrue*, No. 1:07-cv-0698-DFH-WTL, 2008 WL 1766964, at *9-10 (S.D. Ind. Apr. 14, 2008) (holding ALJ's mistaken reliance on non-physician report did not constitute reversible error because ALJ supported her opinion with sufficient medical evidence for court to conclude that ALJ would have reached same result if she knew assessment was completed by a lay person).

Finally, the Court rejects the claim that the ALJ erred because he did not place any limitations on Taff's ability to work because of Taff's Dupuytren's contracture[2] in his right hand. The ALJ did not err because no limitations are supported by the record. Although Plaintiff was diagnosed with Dupuytren's contracture in both hands, his complaints of upper extremity symptoms primarily related to his left hand or forearm. R. at 287-92, 308-16, 330-34. Dr. Al-Shathir also characterized the Dupuytren's contracture in Taff's right hand as "mild" and noted that he had full range of motion. R. at 295. Thus on this record, the ALJ did not err in finding any limitations due to Taff's right hand.

Accordingly, the ALJ's RFC determination is supported by substantial evidence.

**B.      The ALJ's credibility analysis is supported by substantial evidence on the record.**

Plaintiff also claims the ALJ's credibility analysis is not supported by substantial evidence on the record. Plaintiff argues he is more credible than suggested by the ALJ, and that the ALJ misstated the medical and other evidence regarding his impairments.

---

[2] Dupuytren's contracture is the shortening, thickening, and fibrosis of the bundles of fibrous tissue radiating toward the bases of the fingers from the tendons of a muscle in the palm of the hand, producing a flexion deformity of a finger. DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 107, 373, 608-09, 1217 (28th ed. 1994).

6

The credibility question here is not whether Taff actually experiences the subjective complaints alleged but whether these symptoms are credible to the extent that they prevent him from performing substantial gainful activity. *Hogan v. Apfel*, 239 F.3d 958, 961 (8th Cir. 2001). In this case, the ALJ found Plaintiff's subjective complaints were not credible to the extent he claimed to be disabled. R. at 11-15. The ALJ recognized that Plaintiff suffered from the severe impairments of Dupuytren's contracture of bilateral hands left worse than right, degenerative disc disease and osteoarthritis of the lumbar spine, and a new diagnosis of COPD, but determined this evidence did not support his claim that these impairments rendered him unable to work. R. at 11-16. Although an ALJ may not disregard subjective allegations solely because they are not fully supported by objective medical evidence, he may properly discount them if they are inconsistent with the record as a whole. *Gonzales v. Barnhart*, 465 F.3d 890, 895 (8th Cir. 2006).

The record as a whole supports the ALJ's finding that Plaintiff's symptoms were not disabling. R. at 11-15. With respect to Taff's hand problems, the record shows that he was evaluated for left hand and forearm pain in July of 2008 and diagnosed with Dupuyen's contracture in both hands. R. at 306-16, 287-92. When he was subsequently examined in January 2009 by Dr. Al-Shathir, he had some limits on use of his left hand, but he had full range of motion in his right. R. at 14, 295. He also had full grip strength with the ability to make a fist, and his fingers could be opposed. R. at 296. Although treatment notes from the spring of 2009 contain references to his Dupuytren's contracture, the records do not indicate any complaints, assessments, or treatment for this problem, which is inconsistent with an allegation of a disabling impairment. R. at 318-35.

As for his back pain, the ALJ observed that an x-ray showed diffuse degenerative disc disease, but physical examinations were routinely normal and without evidence of regular muscle spasm, muscle atrophy, decreased strength, positive straight leg raising tests, inflammatory signs, neurological deficits, or bowel or bladder dysfunction. R. at 14, 318-30. Dr. Al-Shathir's examination also revealed full range of motion in his cervical and lumbar spine and hips, no significant neurological deficits, and no loss of range of motion or effusion in his knees. R. at 295-97, 322, 329-30.

In addition to the lack of objective evidence corroborating the alleged severity of his impairments, the record shows that Taff's medical treatment was fairly minimal and conservative. For example, as the ALJ noted, Taff was never referred for corrective surgery or even for pain management. R. at 14. Taff's pain treatment was limited to medication, which he had only begun taking in the summer or fall of 2009. R. at 14, 27, 30-31, 278-79. This weighs against Taff's credibility. *Gowell v. Apfel*, 242 F.3d 793, 796 (8th Cir. 2001) (holding the ALJ may consider a pattern of conservative treatment in evaluating a claimant's credibility,).

Although Taff argues his condition was sufficiently severe that his doctor recommended hand surgery in April 2008, the record does not support this claim. Taff cites a brief handwritten notation, "Hand surgery/UC" (R. at 287), as support. The meaning of this notation, however, is unclear. While it is possible his doctor was recommending surgery, it is equally plausible that the doctor was memorializing that he had counseled Taff as to the possibility of hand surgery. Indeed, Taff's claim that the doctor was recommending surgery conflicts with a treatment note dated three months later, in which the doctor stated that an electromyography/nerve conduction study (EMG/NCS) would be conducted first to rule out carpal tunnel syndrome before deciding whether to recommend surgery. R. at 290, 312. Nothing in the record suggests an EMG/NCS

test was ever performed, and no hand surgery was actually ever performed. Also, Taff's treatment records from June 2009 through March 2010 do not mention any Dupuytren's contracture diagnosis or document any complaints or treatment for this condition. R. at 318-29. Thus, even if the April 2008 treatment note could be interpreted as a recommendation for surgery, this recommendation was subsequently abandoned. Accordingly, the ALJ did not err here.

In addition to the lack of objective medical evidence and treatment history indicating that Taff was disabled by his physical complaints, other inconsistencies in the record support the ALJ's conclusion. The ALJ noted that none of Taff's treating or examining physicians recommended any work-related limitations or restrictions. R. at 14. This supports the ALJ's decision. *Moore v. Astrue*, 572 F.3d 520, 524 (8th Cir. 2009). The ALJ also noted that Taff's self-reported activities were inconsistent with his claim that he was unable to work. R. at 14. Taff reported that he performed chores such as cleaning, mowing, taking out the trash, and doing the dishes. R. at 244. While a claimant need not be bed-ridden to be disabled, "[a]llegations of pain may be discredited by evidence of daily activities inconsistent with such allegations." *Davis v. Apfel*, 239 F.3d 962, 966-67 (8th Cir. 2001).[3]

Because the ALJ has articulated the inconsistencies that undermine the claimant's subjective complaints and these inconsistencies are supported by the record, the ALJ's credibility determination is affirmed. *Eichelberger v. Barnhart*, 390 F.3d 584, 590 (8th Cir. 2004).

## Conclusion

---

[3] The Court gives limited weight to the ALJ's observations about the claimant's demeanor during the hearing. The ALJ claimed that the hearing lasted for 40 minutes and that during that time Taff never exhibited any sign of pain or the need to move about because of his back impairment, which undercuts Taff's claim that he could not sit for more than 15 minutes before moving. This argument is of limited value, however, because the hearing actually lasted only 25 minutes (R. at 23, 36), not 40, and not moving for the last ten minutes of the hearing is not compelling evidence concerning Taff's credibility.

For the reasons discussed above, the Commissioner's decision is AFFIRMED.

**IT IS SO ORDERED.**

Date:  January 2, 2013            /s/ Greg Kays
                                  GREG KAYS, JUDGE
                                  UNITED STATES DISTRICT COURT